**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

IN RE HERMIT'S PEAK/CALF CANYON
FIRE LITIGATION All pending FEMA cases

# MEMORANDUM OPINION AND ORDER APPOINTING A SPECIAL MASTER

This matter is before the Court following the Court's Order to Meet and Confer Regarding the Appointment of a Special Master, Doc. 51, Plaintiffs' Brief Opposing the Appointment of a Special Master, Doc. 52, and FEMA's Brief Regarding the Appointment of a Special Master, Doc. 53.[1] The Court held a hearing on the matter on October 29, 2026. After due consideration of the parties' briefing, the statutory goal of achieving expeditious processing of the claims, and upon further assessment of the extensive nature of judicial review cases, the large volume of such cases, the potential expense to the parties, the lack of judicial resources, and the risk of delay, the Court concludes that the appointment of a special master is warranted to assist with the ultimate resolution of pending judicial review claims.

## *I. Background*

This matter arises from the Hermit's Peak/Calf Canyon Fire—the largest wildfire in New Mexico history—that scorched 340,000 acres of land in northeastern New Mexico in April 2022. *Dolan v. Fed. Emergency Mgmt. Agency*, 760 F. Supp. 3d 1200, 1208 (D.N.M. 2024). The fire erupted after two prescribed burns escaped the containment capabilities of the U.S. Forest Service and merged, "destroying over 900 structures, and forcing the evacuation of over 15,000 households throughout Mora, San Miguel, and Taos Counties." *Id.* The Forest Service

[1] All document citations are to *Passamonti v. Fed. Emergency Mgmt. Agency*, No. 24-cv-681-KG-JFR.

assumed responsibility for the fire. *See* Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117–180, § 102(a)(8), 136 Stat. 2114, 2168 (Sept. 30, 2022) (the "Hermit's Peak Act"). Congress enacted the Hermit's Peak Act "(1) to compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire; and (2) to provide for the expeditious consideration and settlement of claims for those injuries." *Id.* at § 102(b)(1)–(2). Congress appropriated $2.5 billion to compensate victims and to fund the Hermit's Peak/Calf Canyon Fire Claims Office. *Id.* at § 136, 136 Stat. at 2122. In two subsequent spending bills, Congress provided $2.95 billion in additional funding for a total of $5.45 billion in disaster relief.[2]

Since Congress enacted the Hermit's Peak Act in September 2022, FEMA has compensated 25,320 Proofs of Loss and paid out an estimated $3.85 billion in damages.[3] FEMA estimates that less than 8,000 Proofs of Loss remain pending adjudication by the agency.[4] Draft Hearing Transcript, Oct. 29, 2026, at 56:4–57:5.[5] When the Court inquired, FEMA could not provide the Court an estimate of total administrative costs as of October 2026.[6] Draft Hearing Transcript, Oct. 29, 2026, at 21:7–17.

---

[2]The Consolidated Appropriations Act of 2023 included $1.45 billion in additional funding "to carry out the Hermit's Peak/Calf Canyon Fire Assistance Act[.]" Pub. L. No. 117–328, 136 Stat. 4459, 5214 (Dec. 29, 2022). An additional $1.5 billion was included in the American Relief Act, 2025. Pub. L. No. 118–158, 138 Stat. 1722, 1746 (Dec. 21, 2024); *see also* Fed. Emergency Mgmt. Agency, Policies, Regulations and Reports (Mar. 6, 2026) https://www.fema.gov/hermits-peak/policies (last accessed Nov. 17, 2026).

[3]Fed. Emergency Mgmt. Agency, Hermit's Peak/Calf Canyon FEMA Claims Office by the Numbers (Nov. 9, 2026), https://www.fema.gov/sites/default/files/graphics/fema_by-the-numbers_info-graphic_english.jpg (last accessed Nov. 16, 2026).

[4]A Proof of Loss "means a statement attesting to the nature and extent of the claimant's injuries." 44 C.F.R. § 296.4. "Proof of Loss" is a term of art and simply refers to a claim for compensation brought under the Hermit's Peak Act.

[5]The Court's citation to the hearing transcript refers to the court reporter's original unedited version. Any final transcript may contain slightly different page and/or line numbers.

[6]In March 2025, news outlets reported that the estimated total administrative costs incurred by the Hermit's Peak/Calf Canyon Fire Claims Office from FY2022 through FY2025

The Hermit's Peak Act allows claimants who are dissatisfied with FEMA's final determination of their claim to appeal the decision to the federal district court. *See* Hermit's Peak Act, § 104(i)(1) (stating that "[a]ny claimant aggrieved by a final decision of the Administrator under this Act may . . . bring a civil action . . . to modify or set aside the decision, in whole or in part." The Court must uphold FEMA's compensation award "if the decision is supported by substantial evidence on the record considered as a whole." *Id.* at § 104(i)(3). In other words, each claim for judicial review requires an individualized assessment based on review of an expansive administrative record. Before the Court are roughly 860 claims for judicial review filed in 27 separate actions. The parties estimate that 1,000 additional claims currently awaiting a final decision by FEMA may proceed to judicial review. Draft Hearing Transcript, Oct. 29, 2026, at 56:13–19. Since 2023, when the first actions for judicial review were filed in this District, Plaintiffs' counsel estimates that less than 50 claims have been modified and resolved through the judicial review process. Draft Hearing Transcript, Oct. 29, 2026, at 27:15–21. FEMA has appealed these award modifications; therefore, none of the claimants who have undergone judicial review proceedings have been compensated for their damages. Draft Hearing Transcript, Oct. 29, 2026, at 25:14–22.

Apart from judicial review claims are thirteen separate actions brought against FEMA under the Administrative Procedure Act, 5 U.S.C. §§ 571–584, to set aside unlawful agency action or compel agency action unlawfully withheld or unreasonably delayed. There are also

was $377 million. *See* Patrick Lohman, FEMA to spend $377M administering Hermits Peak-Calf Canyon fire compensation program, records show, (Mar. 19, 2025) https://sourcenm.com/2025/03/19/fema-to-spend-377m-administering-hermits-peak-calf-canyon-fire-compensation-program-records-show/ (last accessed Nov. 16, 2026).

two Federal Tort Claim Act actions before this Court related to the Hermit's Peak/Calf Canyon Fire.

In an effort to expedite consideration of Plaintiffs' judicial review claims, the Court ordered the parties to meet and confer regarding the appointment of a special master. Doc. 51. Plaintiffs oppose the appointment and "respectfully submit that referral to a magistrate judge is the more efficient mechanism, and that it should be preferred over appointment of a special master." Doc. 52 at 9. Plaintiffs argue that "adding another procedural layer, even one intended to promote efficiency, would instead create another opportunity for delay in cases where finality and payment are already long overdue." *Id.* at 7. FEMA also objects, stating that "the appointment of a special master is unnecessary" and noting that "magistrate judges are best suited to fulfill the role of a special master." Doc. 53 at 6. FEMA further asserts that no exceptional conditions exist to warrant appointment of a master, and that appointing a special master would "impose a substantial expense on the parties." *Id.* at 8.

## *II. Legal Standard*

The purpose of a special master is "to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause[.]" *La Buy v. Howes Leather Co.*, 352 U.S. 249, 256 (1957) (citation modified). As relevant here, Fed. R. Civ. P. 53(a)(1)(B) permits a court to appoint a special master to:

> (B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by:
>
> > (i) some exceptional condition; or
> > (ii) the need to perform an accounting or resolve a difficult computation of damages[.]

The appointment of a special master under Rule 53(a)(1)(B) must be justified by an "exceptional condition[.]" *La Buy*, 352 U.S. at 259; *see also Bradshaw v. Thompson*, 454 F.2d 75, 80 (6th Cir. 1972) ("The overall mandate of Rule 53(b) is that reference to a master is to be the exception and not the rule."). Court calendar congestion, whether due to increased filings and/or shortage of judge-power, "in itself is not such an exceptional circumstance as to warrant a reference to a master." *La Buy*, 352 U.S. at 259. "That the case involves complex issues of fact and law is no justification for reference to a Master, but rather is an impelling reason for trial before an experienced judge." *Bartlett-Collins Co. v. Surinam Nav. Co.*, 381 F.2d 546, 551 (10th Cir. 1967).

The decision to appoint a master is within the sound discretion of the district court. *Sims Consol., Ltd. v. Irrigation & Power Equipment, Inc.*, 518 F.2d 413, 417 (10th Cir. 1975). "In appointing a master, the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay." Rule 53(a)(3).

***III. Analysis***

The Court concludes that exceptional conditions justify the appointment of a special master in this case. A trial court may appoint a special master to resolve a complicated case where promptness is required by the public interest. *See, e.g., United States v. Conservation Chemical Co.*, 106 F.R.D 210, 225 (W.D. Miss. 1985) (finding that a "serious and immediate threat to public health" caused by environmental contamination, the extensive time required to adjudicate the claims, and the complexity of the evidence justified the appointment of a special master); *In re World Trade Center Disaster Site Litigation*, Nos. 21-mc-100-AKH, 03-cv-00007-AKH, 2006 WL 2948821, at *1 (S.D.N.Y. 2006) ("The number and complexity of these cases, and the public interest in their speedy resolution, requires a greater urgency in progression, and a

closer supervision of proceedings, than heretofore has been possible. The involvement of a Special Master has become necessary."). Section 102(b)(2) of the Hermit's Peak Act provides "for the expeditious consideration and settlement of claims" for injuries resulting from the fire. Four years have passed since Congress enacted the Hermit's Peak Act in September 2022. Less than 50 claimants have obtained judicial review of their claim determination. Draft Hearing Transcript, Oct. 29, 2026, at 27:15–21. Approximately 860 judicial review claims remain pending before the Court—and the parties estimate that 1,000 additional claims currently awaiting a final decision by FEMA may proceed to judicial review. Draft Hearing Transcript, Oct. 29, 2026, at 56:13–19. It is doubtful that the Court could resolve such a high volume of claims and comply with Congress's mandate that victims of the Hermit's Peak/Calf Canyon Fire receive compensation expeditiously. *Cf. Dolan v. Fed. Emergency Mgmt. Agency*, Nos. 25-2102, 25-2103, 2026 WL 3530717, at *6 (10th Cir. Nov. 10, 2026) (concluding that noneconomic damages are not available under the Hermit's Peak Act as expedited claims process "does not lend itself to calculating more amorphous noneconomic harms such as pain and suffering, or emotional distress, or loss of enjoyment, which would make the recovery much more difficult to calculate and *more difficult to resolve expeditiously*" (emphasis added)).

Furthermore, judicial review claims require individualized consideration based on an extensive administrative record. *See* Hermit's Peak Act § 104(i)(2)(stating that "[t]he court shall hear a civil action . . . on the record made before the Administrator"). The resources and efforts required to address the issues raised by Plaintiffs would result in further delay as the Court determines legal issues, schedules judicial review hearings, and makes factual determinations of allowable damages. While the special master will not hear or determine any

claim that presents a legal issue, the master will be empowered to preside over evidentiary trials and report findings of fact, including an accounting of allowable damages.

As a practical matter, time is also of the essence. "Recovery under the [Hermit's Peak] Act is dependent on there being available funds provided by Congress." *Dolan*, 2026 WL 3530717, at *5. Congress has authorized a total of $5.45 billion compensation, minus administrative costs, for the victims of the fire. But that money is quickly running out. Counsel for FEMA estimates that $1 billion in funds remain. Draft Hearing Transcript, Oct. 29, 2026, at 6:23–7:2. If these claims are not adjudicated as quickly as possible, there is a real possibility that there will not be any money left by the time these claims are adjudicated. *Cf. Hackley v. Roudebush*, 520 F.2d 108, 154 n.181 (D.C. Cir. 1975) (explaining that the "exceptional circumstances" standard is somewhat relaxed under Title VII because 42 U.S.C. § 2000e–5(f)(5) authorizes the appointment of a special master where "the trial judge is unable to comply with Title VII's mandate to expedite discrimination cases"); *Jamie S. v. Milwaukee Public Schools*, No. 01-cv-928, 2009 WL 1615520, *25–27 (E.D. Wis. June 9, 2009) (appointing a special master at the remedy phase of the litigation because the evidence showed hundreds of class members with potentially compensable claims under the Individuals with Disabilities Education Act).

The Court notes that the master's compensation is likely to be paid out of the recovery fund. Under Rule 53(a)(3), courts must consider the fairness of imposing the special master's expenses on the parties. On this point, the Court is persuaded that a special master will decrease administrative costs, which are estimated to have exceeded $300 million.

As a final matter, the Court rejects the parties' arguments that a magistrate judge is more suitable for handling judicial review claims. As the Court explained at the hearing, the District

of New Mexico is attending to an unprecedented increase in both criminal and civil cases, while experiencing judicial vacancies. Draft Hearing Transcript, Oct. 29, 2026, at 43:10–45:2. Appointing a magistrate judge under these circumstances would inevitably delay resolution of these cases and would frustrate Congress's intent in passing the Hermit's Peak Act.

In light of the ever-shrinking compensation fund, the need for greater urgency in resolving these cases, and the close review and supervision required to individually assess each claim for judicial review, the Court finds the appointment of a special master is necessary and appropriate.

***IV. Conclusion***

The Court sets forth the following briefing schedule regarding a proposed order of appointment. *See* Rule 53(b); *see also* Thomas Willging, et al., *Special Masters' Incidence and Activity: Report to the Judicial Conference's Advisory Committee on Civil Rules and Its Subcommittee on Special Masters* at 7 (2000) (noting that courts frequently invite the parties and special master to help structure an appointing order). The parties shall meet and confer concerning the following topics: the proposed scope of the special master's duties, including any case management or other supervisory powers; the authority of the master, including how the master's recommendations will be received and reviewed; the process for submitting the administrative record and other materials to be reviewed by the master; how the master will be compensated; required resources, including the necessity of employing other persons to provide clerical and secretarial assistance; any process for objecting to the master's report and recommendations; whether the parties will agree to bind themselves to the master's factual findings; any other content required under Rule 53(b)(2); and any recommendations as to particular candidates.

To the extent the parties agree on a stipulated order of appointment, the parties shall file the stipulated order no later than forty-five (45) days, on or before **January 11, 2027**. If the parties are unable to agree, the parties shall certify to the Court, in writing, by **January 11, 2027**, that they met and conferred in good faith and shall tender their own proposed appointment order.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.